On April 20, 2005, the Jefferson District Court found Michele Sullivan in both direct and constructive criminal contempt of court[1] for "wilfully and intentionally order[ing] *Page 60 
the victim of a felony offense to leave the court." (C. 2.) Sullivan was sentenced to five days in the county jail.
The record reflects the following. Sullivan, an attorney who had been practicing law for approximately one year, was appointed to represent Lakeeshia Westry against a robbery charge ("the Westry case"). A preliminary hearing was scheduled in the Westry case for the morning of April 20, 2005. The following facts were undisputed: that the victim of the alleged robbery, Robert Bradley, was asked to appear at the preliminary hearing;[2] that Bradley had never met Sullivan or the deputy district attorney prosecuting the Westry case, Michael Streety, before that day; and that, shortly before the preliminary hearing was scheduled to begin, Bradley and Sullivan had a conversation in the hallway outside the courtroom, after which Bradley left the courthouse. It was this conversation that led to the district court's convening a contempt hearing and ultimately finding Sullivan in contempt of court.
The contempt hearing was held within a very short time of the conversation between Sullivan and Bradley, and there is no indication in the record that Sullivan or her appointed defense counsel were given notice of the exact charge against her or of the purpose of the hearing until the hearing actually began. At the beginning of the contempt hearing, the district court stated that it had been informed that Bradley had come to the courthouse that morning and had been "advised that he should leave now or he would be in trouble" and had been given several of Sullivan's business cards, and that it had appointed counsel to represent Sullivan in "a contempt of court case." (R. 3.) Defense counsel then moved for a continuance of the hearing,[3] stating that he had had only "approximately 10 minutes or so to discuss this situation" with Sullivan, and that he needed a continuance for "further preparation." (R. 4.) The State did not dispute that Sullivan and her defense counsel had had only 10 minutes to prepare for the hearing; nevertheless, the district court denied the motion for a continuance on the grounds that the issue was not complex and that defense counsel was a "seasoned trial attorney." (R. 5.) Deputy district attorney Michael Streety then called Bradley to testify. Defense counsel objected to Streety's acting as the prosecutor in the case on the ground that Streety might be called as a witness. The court sustained the objection and instructed another deputy district attorney who was present in the courtroom to prosecute the case. At that point, defense counsel asked "for clarification of a point," specifically, counsel asked "Are we here on a contempt proceeding?" (R. 7.) The district court answered in the affirmative, and defense counsel then asked "Are we talking a direct contempt or an indirect contempt?" (R. 7.) The district court answered "both." (R. 7.)
Bradley testified that he was told to be in court on the morning of April 20, 2005, and that he arrived at the courthouse at *Page 61 
approximately 9:45 a.m. Bradley said that he was about to ask someone at the clerk's counter in what courtroom he was supposed to be when he saw Sullivan and approached her instead. Bradley said that he showed Sullivan a letter he had received from the district attorney's office telling him to report to court and that Sullivan told him that she was the attorney "handling [the] case" and that he was not "supposed to be here." (R. 17.) Bradley testified that Sullivan said, "Be best you leave or you'll be in trouble. Leave right now and you won't be in trouble." (R. 11.) According to Bradley, Sullivan wrote Bradley's name and address on a piece of paper, and gave him four of her business cards. Bradley testified that he then left the courthouse and went directly to his employer and told his employer about his conversation with Sullivan; that his employer then "called and talked to the judge" (R. 11); that the judge then told him to come back to the courthouse; and that he then returned to the courthouse.
On cross-examination, Sullivan's counsel attempted to question Bradley regarding the robbery complaint he had lodged against Westry and the fact that only two months earlier Bradley had lodged a similar robbery complaint against Westry's husband. Counsel argued that the line of questioning might be relevant to Bradley's possible motive for not wanting to testify at the preliminary hearing. However, the district court sustained the State's objection to that line of questioning and would not allow Sullivan's counsel to pursue it.
On redirect examination, the prosecutor elicited the following facts from Bradley: that he had only a ninth-grade education; that he had been in a motorcycle accident in 1975 that caused hearing damage; and that he was receiving disability benefits as a result of the accident. On recross-examination, Sullivan's counsel then questioned Bradley about his hearing loss as follows:
 "[Sullivan's counsel]: Not to get too personal, sir, but do you have any type of speech problem? Is that part of your disability or anything where you're hard to understand sometimes?
 "[Bradley]: That's because my hearing is off.
 "[Sullivan's counsel]: Your hearing is off?
 "[Bradley]: Yes, sir.
 "[Sullivan's counsel]: How bad is your hearing?
 "[Bradley]: Well, you've got to be right up on me to hear you.
 "[Sullivan's counsel]: Right up on you to hear me?
 "[Bradley]: Yes, sir.
 "[Sullivan's counsel]: Have you ever been given a percentage where your hearing is like 80, 90 percent?
 "[Bradley]: Yeah.
 "[Sullivan's counsel]: Are you deaf?
 "[Bradley]: If I'm far away — no, I'm not deaf. If I get far away I can barely hear you.
 "[Sullivan's counsel]: Right.
 "[Bradley]: I can hear the sound if you're talking right at me. Hear you clearly."
(R. 26.)
Deputy district attorney Streety testified that a preliminary hearing was scheduled in the Westry case for April 20, 2005; that he had mailed a letter to Bradley telling him to be in court that day; and that he had followed up the letter with a telephone call and had spoken to Bradley's sister and had asked her to tell Bradley to be in court the morning of April 20, 2005. Streety testified that he did not see Bradley that morning, but that Sullivan arrived in the courthouse between 9:50 and 9:55 *Page 62 
a.m. Streety said that he did not discuss the case with Sullivan, other than to provide her with a written offer and a copy of the offense report; that Sullivan did not mention to him that she had spoken with Bradley; and that Sullivan did not request a dismissal of the charge against her client on the ground that Bradley was not present to testify at the preliminary hearing. Streety testified that he was in the court-room for the preliminary hearing when he received a telephone call in the courtroom from Bradley's employer and learned that Bradley had left the courthouse; he told Bradley that he needed to come back to the courthouse, and Bradley returned to the courthouse. It appears from the record that the preliminary hearing in the Westry case was not conducted, but that the contempt hearing was convened instead. Streety said that he had worked professionally with Sullivan for about a year and that they had had one disagreement, but that he had formed no opinion of her.
Following Streety's testimony, Sullivan indicated that she wanted to testify on her own behalf; her counsel then requested a moment to speak with Sullivan. After a short pause in the proceedings, the following exchange occurred:
 "THE COURT: You're recommending your client not to testify and you've conveyed that to her; is that correct, [defense counsel]?
 "[Sullivan's counsel]: In the short period of time that I have had to discuss this.
 "THE COURT: And you do this as the respected attorney that you are?
 "[Sullivan's counsel]: Right.
 "THE COURT: Ms. Sullivan, is it your desire to testify?
 "[Sullivan]: Your Honor, I'm going to follow my lawyer's advice.
 "THE COURT: All right. That is fine. Anything else for the defense?
 "[Sullivan's counsel]: Other than an argument. Let me talk to her just a minute.
 "(Short pause.)
 "THE COURT: Ms. Sullivan, it's your desire to testify. Come around."
(R. 33-34.) Sullivan then took the stand and testified on her own behalf.
Sullivan testified that she came to the courthouse the morning of April 20, 2005, for a preliminary hearing in the Westry case; that she received discovery in the case from the deputy district attorney; and that as she was about to walk into the courtroom from the hallway, Bradley approached her and grabbed her arm. Sullivan said that Bradley did not grab her arm violently, but that it appeared that he was nervous and that "there was something wrong with him" because she could not understand him very well. (R. 40.) Sullivan testified that she did not know who Bradley was until he showed her a letter from the district attorney's office. Sullivan denied telling Bradley to leave the courthouse; denied telling Bradley that he would get in trouble if he stayed; and denied threatening Bradley. Rather, Sullivan said, she identified herself as the defense attorney in the case and told Bradley that he needed to speak with Michael Streety, the deputy district attorney handling the case. Sullivan testified that Bradley asked her who Michael Streety was and that she pointed through the glass door to the courtroom and identified Streety for Bradley. Sullivan said that Bradley told her the person she had pointed to was "the judge" and that she reiterated to Bradley that the person was the district attorney. (R. 42.) Sullivan stated that she told Bradley that he was "supposed to be here" for a preliminary hearing and that she told Bradley which courtroom he *Page 63 
was supposed to be in. (R. 38.) Sullivan also stated that when she realized that Bradley was the alleged victim in her case, she asked Bradley if she could write down his address so that she could subpoena him; that Bradley asked her if "he need[ed] to talk to" her; that she told Bradley that "right now I don't need to talk to you"; and that she then gave Bradley her business cards and told him that he could telephone her and talk to her about the case if he wanted to. (R. 43.) Sullivan said that she was in a hurry when she was talking to Bradley because she had a meeting with another attorney and wanted to waive the preliminary hearing in the Westry case as quickly as possible and that she just grabbed her business cards and gave them to him. Sullivan testified that after her conversation with Bradley, she walked into the courtroom, where her client was waiting for her; that she thought that Bradley was following her into the courtroom; and that that was "the last [she] saw" of Bradley. (R. 40.) Sullivan described Bradley as "very confused" during their conversation (R. 42), and when asked whether Bradley was lying regarding his version of their conversation, Sullivan said:
 "Well, I noticed something was wrong with the guy. I'm not going to sit here and call the man a liar. I mean, he's mistaken on what happened, occurred in our conversation in the two minutes that we stood out there and talked to each other."
(R. 41.)
Immediately following Sullivan's testimony, the district court removed Sullivan as the attorney of record in the Westry case and found Sullivan in contempt of court, stating, in pertinent part:
 "I further find that the victim was ordered to this Court and told to come through several communications and did appear here.
 "Ms. Sullivan, it is my feeling that you wilfully and intentionally advised this victim of a felony to leave this courtroom. It does not make any sense for somebody who is not a participant in here to say these things. I'm going to tell you this: I have been here 30 years. We're in Birmingham, Alabama. For a physically semi-retired [sic] black man to come up and grab a white woman's arm in the courthouse, I've never seen it or heard it. It's not a fantasy. It's an untruth. I think you have wilfully played games with this Court.
 ". . . .
 "And the first moment I had the information is when Mr. Streety said, Judge, I have an emergency. I thought maybe it was his family. And he told me. And I said to tell the people to come in. This can't happen. Attorneys are going to have to fight each other in the courtroom within the parameters. You're not bad. You've beaten a couple of the [district attorneys] at their own game. In the courtroom. But there seems to be a cloud. Now the cloud is before me. You're not just a run-of-the-mill citizen. You're a practitioner in here. You're held to a little higher degree, a lot higher degree when it comes to that. I don't mind an attorney trying to get ahold of witnesses and if the witnesses won't talk to them, telling the Judge and putting the witness on the stand and taping it. But I tend to believe this guy. We can't have that.
 "I'm going to find you in contempt of my Court for what you did today. It's not like you've mouthed off to me and you're a civilian. You know better. I'm giving you five days to serve in the Jefferson county jail. I'm ordering a copy of this being made. And if the district attorney decides, to send it to the [state] bar association. This has got *Page 64 
to be sending a message to you and to anybody else because it's really not heard of. When it is, it becomes a cancer on the whole system. So, you're in the custody of my bailiff to serve five days."
(R. 44-47.)
Following this contempt finding, Sullivan's counsel asked whether the district court was finding Sullivan in direct or constructive contempt, and the court responded that it was finding Sullivan in both direct and constructive contempt. When the court then remanded Sullivan to the custody of the sheriff, Sullivan's counsel moved to stay the imposition of the sentence on the ground that Sullivan was the sole custodian of her five-year-old child and that she needed time to make arrangements for the care of her child. Counsel stated that Sullivan would surrender at a later date after she had had time to make arrangements for her child. Counsel also gave oral notice of appeal and moved for an appeal bond. The district court denied both motions and stated that it was not sure whether a contempt proceeding was a bondable proceeding. Sullivan's counsel argued that a constructive-contempt proceeding is bondable[4] and then argued that there was insufficient evidence to warrant a finding of direct contempt because "[n]o actions occurred in this courtroom." (R. 48-49.) Counsel also attempted to argue that there was no evidence that any court order had been issued for Bradley's appearance at the preliminary hearing and, thus, that the court's statement that Bradley had been ordered to appear was incorrect; however, the district court interrupted Sullivan's counsel, stating that "[t]here was a subpoena issued" and that "[a] higher court will have to tell me that I'm wrong." (R. 49.) Sullivan was immediately taken into custody following the contempt hearing, but the district court released Sullivan from custody later that same day, upon a joint motion of the parties, finding that Sullivan had "purged" herself of the contempt by agreeing to seek counseling.[5] (C. 3.)
Sullivan makes three arguments on appeal. Two of those arguments require that we reverse the district court's finding of both direct and constructive contempt. Therefore, we address only those two arguments.
 I.
Sullivan contends, and the State concedes, that the evidence was insufficient to support the district court's finding of direct criminal contempt. Direct contempt is defined as
 "disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court's business, where all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court, and where immediate action is essential to prevent diminution of the court's dignity and authority before the public." *Page 65 
Rule 33.1(b)(1), Ala.R.Crim.P. (emphasis added). It is undisputed that none of the conduct giving rise to the contempt finding occurred in the presence of the district court judge who found Sullivan in contempt. Therefore, there was insufficient evidence of direct contempt, and the district court's finding in that regard was error and must be reversed.
 II.
Sullivan also contends that she was denied her due-process right to a reasonable time to prepare her defense and that the district court erred in denying her motion for a continuance of the hearing.
Initially, we note that the State argues on appeal that Sullivan's due-process argument was not properly preserved for review because, it says, although Sullivan moved for a continuance, she did not specifically argue to the district court that she was denied due process. As noted above, Sullivan's counsel moved for a continuance of the contempt proceeding on the ground that he had had only "approximately 10 minutes or so to discuss this situation" with Sullivan and needed additional time for "further preparation." (R. 4.) It is well settled that one of the due-process protections afforded contemnors in constructive-contempt proceedings is the right to a reasonable time to prepare for the contempt hearing. See Rule 33.3, Ala.R.Crim.P. See also Cooke v.United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767
(1925), and Hunter v. State, 251 Ala. 11,37 So.2d 276 (1948). It is equally well settled that trial judges are presumed to know the law. See, e.g., Maples v. State,758 So.2d 1, 50 (Ala.Crim.App.) ("[T]rial judges are presumed to know the law and to follow it."), affd, 758 So.2d 81
(Ala. 1999). Sullivan's motion was sufficient to put the district court on notice that due process was at issue, despite the fact that Sullivan's counsel did not specifically use the words "due process." Therefore, this issue was properly preserved for review.
Rule 33.3, Ala.R.Crim.P., governs the procedure for constructive-contempt proceedings, and sets out the due-process protections afforded to contemnors. Rule 33.3(d), Ala.R.Crim.P., specifically provides:
 "(d) Hearing. The hearing shall be set so as to allow a reasonable time for the preparation of the defense. The contemnor shall be afforded the opportunity to present exculpatory evidence and evidence of mitigating and extenuating circumstances, shall be entitled to subpoena witnesses on his or her behalf, and shall be entitled to be represented by counsel as provided in Rule 6."
"It is well settled that the disposition of a motion for a continuance is vested in the sound discretion of the trial court and that its ruling will not be disturbed on appeal, except upon a clear showing of abuse of discretion." Exparte H.P.W., 628 So.2d 514, 517 (Ala. 1993). "Generally, the granting or denying of a motion for continuance on the ground that counsel had insufficient time to prepare for trial rests within the sound discretion of the trial judge, and his discretion will not be reviewed except in cases of gross abuse of discretion." Brown v. State, 395 So.2d 121, 122
(Ala.Crim.App. 1980). As this Court explained in Loggins v.State, 771 So.2d 1070 (Ala.Crim.App. 1999), affd,771 So.2d 1093 (Ala. 2000):
 "The trial court has broad discretion in granting a continuance when the basis for the motion is that counsel has not had sufficient time to prepare or to develop his defense. Godfrey v. State, 383 So.2d 575, 577 (Ala.Cr.App.), cert, denied, 383 So.2d 579 (Ala.), cert, denied, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134
(1980), citing Smith v. State, *Page 66 282 Ala. 268, 210 So.2d 826 (1968). `A motion for a continuance due to a lack of time for adequate preparation is a matter entirely and exclusively within the sound discretion of the trial court and its ruling will not be reversed on appeal absent a . . . showing of abuse.' Reynolds v. State, 539 So.2d 428, 429 (Ala.Cr.App. 1988), cert, denied, 539 So.2d 428 ([Ala.] 1988). Moreover, `[t]he reversal of a conviction because of the refusal of the trial judge to grant a continuance requires "a positive demonstration of abuse of judicial discretion." Clayton v. State, 45 Ala.App. 127, 129, 226 So.2d 671, 672 (1969).' Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), writ denied, 372 So.2d 44 (Ala. 1979) (emphasis added [in Loggins
])."
771 So.2d at 1084. "As a general rule, continuances are not favored," In re R.F., 656 So.2d 1237, 1238
(Ala.Civ.App. 1995), and "[o]nly rarely will [an] appellate court find an abuse of discretion" in the denial of a motion for a continuance. Latimer v. Enterprise Hosp.,505 So.2d 375, 376 (Ala. 1987).
However, a trial court's discretion in granting or denying a motion for a continuance is not unbridled. See Ex parteJacobs, 636 So.2d 410, 411 (Ala. 1994) ("Although whether to grant or deny a continuance is within the discretion of the trial court, that discretion is not without limitations."). There are circumstances in which the denial of a motion for a continuance may constitute an abuse of discretion. See Exparte Jacobs, supra (denial of continuance in divorce action where wife was unable to afford airfare from Germany to attend hearing was an abuse of discretion); Latimer, supra (denial of continuance in medical-malpractice action to allow discovery of medical records before summary judgment was entered was an abuse of discretion); Knox v. State,834 So.2d 126 (Ala.Crim.App. 2002) (denial of continuance of robbery trial to allow for court-ordered mental evaluation when appointment for evaluation had been missed as a result of the sheriffs department was an abuse of discretion); Glassv. State, 557 So.2d 845 (Ala.Crim.App. 1990) (denial of continuance of attempted-possession-of-controlled-substances trial to secure defense witnesses who had only been discovered the day of trial as a result of one witness's change of testimony was an abuse of discretion); Payne v. StateDepartment of Human Resources, 532 So.2d 1263
(Ala.Civ.App. 1988) (denial of continuance of hearing on childin-need-of-supervision petition where guardian ad litem was appointed only three days before hearing and had only 45 minutes to review documents State introduced at the hearing was an abuse of discretion); Brown, supra (denial of continuance of possession-of-marijuana trial to allow counsel, who had been appointed the day of trial, time to prepare was an abuse of discretion); and Marler v. State,382 So.2d 644 (Ala.Crim.App. 1980) (denial of continuance of assault-with-intent-to-murder trial to allow counsel, who had been appointed after jury selection, time to prepare was an abuse of discretion). In Ungar v. Sarafite,376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the United States Supreme Court stated:
 "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444 [ (1940) ]. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3 [ (1954) ]. There are no mechanical tests for deciding *Page 67 
when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385 [(1957)]; Torres v. United States, 270 F.2d 252
(C.A. 9th Cir.); cf. United States v. Arlen, 252 F.2d 491 (C.A.2d Cir.)."
376 U.S. at 589-90, 84 S.Ct. 841.
Under the circumstances in this case, Sullivan did not have a reasonable time to prepare her defense. Sullivan had only 10 minutes to discuss the situation with her counsel before the hearing began, and there is no indication in the record that Sullivan had notice of the specific charge against her before the hearing began. Indeed, Sullivan's counsel had to ask the court at the beginning of the hearing if the hearing was for a contempt charge, and if so, whether Sullivan was being charged with direct or constructive contempt. See, e.g., CharlesMfg. Co. v. United Furniture Workers, 361 So.2d 1033
(Ala. 1978) (denial of continuance in constructive-contempt proceeding where contemnors did not know nature of the charges until the beginning of the hearing was an abuse of discretion).
The district court denied the request for a continuance because the issue was not complex, and appointed defense counsel was a seasoned trial attorney. We agree that the issue was not complex, and the record reflects that counsel did an admirable job under the circumstances. However, the entire case came down to credibility — the district court resolved the credibility choice adversely to Sullivan, which is entirely within its discretion, stating that it believed Bradley's version of the events and that it believed that Bradley had no reason to lie — and it is clear that counsel did not have sufficient time to prepare a defense or to subpoena witnesses.
Counsel attempted to cross-examine Bradley about the robbery charge in an attempt to elicit a possible motive for Bradley's not wanting to testify at the preliminary hearing in the Westry case. However, the district court sustained the State's objection. Had counsel had adequate time to prepare, he may have been able to establish the relevancy of this line of questioning or, at most, uncover a possible motive on the part of Bradley. Counsel also questioned Bradley about his hearing loss. However, he did so only on recross-examination, after the prosecutor had elicited the information on redirect examination, thus indicating that counsel did not know about the hearing loss until the prosecutor brought it up. The issue of Bradley's hearing loss appears to be particularly important given the similarities between Bradley's version of the conversation and Sullivan's version of the conversation, including the fact that Bradley testified that Sullivan had told him that he was not "supposed to be here" (R. 17), and Sullivan testified that she told Bradley that hewas "supposed to be here." (R. 38.) Had counsel had adequate time to prepare, further information regarding Bradley's hearing loss may have been obtained.
In addition, counsel had no time to subpoena, or even speak with, possible witnesses. Bradley testified that after his conversation with Sullivan, he went directly to his employer and informed him about what had happened. Deputy district attorney Streety testified that he had received a telephone call from Bradley's employer; however, he did not state the specifics of that conversation. Thus, the only testimony regarding what exactly Bradley told his employer came from *Page 68 
Bradley himself. Had counsel had adequate time to prepare, counsel could have spoken with Bradley's employer and perhaps uncovered inconsistencies between Bradley's testimony and the statements he made to his employer that could have been used for impeachment purposes. Given that the entire case came down to credibility, had counsel had adequate time to prepare, counsel may have also been able to contact and subpoena character witnesses on Sullivan's behalf. And we are unpersuaded by the State's argument in its brief that Sullivan and Bradley were the "only witnesses to the contemptuous event." (State's brief at p. 11.) The record reflects that, although Sullivan and Bradley were the only participants in the conversation, the conversation occurred in the hallway of the courthouse, and may have occurred in close proximity to the clerk's counter. There is no indication in the record that other people did not witness the conversation or possibly overhear parts of the conversation. Had counsel had adequate time to prepare, perhaps witnesses who overheard some or all of the conversation could have been interviewed and/or subpoenaed to testify.
Finally, at the conclusion of the State's case, Sullivan indicated that she wanted to testify on her own behalf, but counsel indicated that he had advised Sullivan not to testify, and again pointed out the little time he had had to prepare for the hearing. After a short discussion with Sullivan, Sullivan indicated she did not want to testify. After another short discussion, Sullivan then took the stand. The confusion between Sullivan and her counsel regarding her testifying again shows the lack of any meaningful preparation time.
Even the most seasoned trial attorney cannot be expected to mount a defense to an unspecified charge in 10 minutes time. Although, as noted, trial courts have broad discretion in determining whether to grant or deny a continuance, under the particular circumstances in this case, where Sullivan had only 10 minutes to consult with counsel before the contempt hearing and was not given notice of the specific charge against her until the contempt hearing began, we conclude that Sullivan was denied her due-process right to a reasonable time to prepare a defense, to present extenuating and/or mitigating circumstances, and to subpoena witnesses pursuant to Rule 33.3(d). Therefore, the district court erred in denying Sullivan's motion for a continuance; its judgment must be reversed and this cause remanded for a new contempt proceeding. On remand, the district court should be mindful of the requirements set out in Rule 33.3(a) and (b) for initiating a constructive-contempt proceeding.
Based on the foregoing, the judgment of the district court is reversed and this cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
SHAW, J., recuses himself.
[1] Although the district court did not specifically state on the record or in its written order whether it was finding Sullivan in criminal contempt or civil contempt, based on the nature of the charge and the purpose of the punishment, it is clear that its finding was one of criminal contempt. See Rule 33.1, Ala.R.Crim.P., and the committee comments thereto, explaining the distinction between criminal contempt and civil contempt.
[2] The record reflects that a subpoena was issued for Bradley. However, the record is ambiguous as to whether Bradley was ever actually served with the subpoena, and the parties dispute that fact.
[3] Counsel also objected to the court's statement regarding the facts of the case without counsel's having been given the opportunity to invoke "the rule" and have Bradley leave the courtroom. (R. 4.) The district court overruled the objection, stating that it had already "spoken to this witness in preparation for his testimony." (R. 5.)
[4] Sullivan's counsel was correct. A constructive-contempt proceeding is bondable. See Rule 33.3(f), Ala.R.Crim.P.
[5] Although neither party makes this argument on appeal, we note that because the contempt was criminal, the district court erred in allowing Sullivan to purge herself of the contempt by agreeing to seek counseling. See, e.g., Hillv. Hill, 637 So.2d 1368, 1370 (Ala.Civ.App. 1994) ("In order to purge himself in a criminal contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both."), and Kalupa v. Kalupa,527 So.2d 1313, 1317 (Ala.Civ.App. 1988) ("The only way a contemnor found guilty of criminal contempt can purge himself is to pay the statutory fine or serve the authorized time in the county jail or do both.").