JOINER, Judge.
*756 Lorenzo Andrew Greene appeals his conviction for second-degree assault, see § 13A-6-21, Ala. Code 1975. Greene was sentenced to 10 years' imprisonment and was ordered to pay, among other things he had to pay, a $1,000 fine, court costs, a $100 crime victims' compensation assessment, and restitution.
Facts and Procedural History
The victim in this case, Katrina Head, began dating Greene when she was 18 years old and Greene was 25 or 26 years old. After Greene lost his job as a correctional officer, their relationship deteriorated. Eventually, Head moved out of the house she had shared with Greene and moved into a mobile home in Enterprise.
On Monday, December 16, 2013, Head got off work in Elba at 10:15 p.m. and drove to her house in Enterprise. After she got out of her car, Head was shot in her side and arm as she reached into her car to retrieve her bag. The force of the shot caused Head to fall to the ground. Head then felt a second shot hit her in her back. Head did not see who shot her and did not see a vehicle leave the scene. A neighbor heard Head screaming and telephoned emergency 911 at 10:55 p.m.
According to Greene's statement to law enforcement, Greene left his house in Enterprise around 10:45 p.m. on the night of the shooting and drove to his grandmother's house in Elba to "mess with [his cars]." (R. 90, 91.) Josh Moultrie, a friend of Greene's, testified that he telephoned Greene and told him that Head had been shot. Moultrie testified that Greene acted like he was "shocked" to hear what had happened to Head. Moultrie further testified that Greene arrived at Moultrie's house in Elba between 11:00 p.m. and 11:45 p.m. Greene then decided to telephone Head's mother to see how Head was doing. According to Moultrie, during this call, Head's mother accused Greene of shooting her daughter, but Greene denied any involvement in the incident. Moultrie also testified that Greene considered going to the hospital to check on Head, but Moultrie advised him that doing so might be dangerous and that Greene should just turn himself in.
Around that time, Investigator Mason Bynum of the Dale County Sheriff's Office was called to the scene to investigate the shooting. When he arrived, Head was in an ambulance about to be transported to the hospital. As he began his investigation, Investigator Bynum asked Head's mother if she had names of any potential suspects, and she gave him Greene's name. Investigator Bynum further testified that, when he arrived at the scene, he found two shotgun waddings "on the driver's side about five to seven yards away from the door, [in] very close proximity to the door." (R. 117.) He did not find any shells or spent shell casings.
The morning after the shooting, Greene was questioned by Investigator Bynum at the Ozark Police Department. During this interview, Greene denied any involvement in the shooting. After obtaining Greene's consent, police searched Greene's car for firearms and found none. Investigator Bynum, however, testified that, during the course of his investigation, he learned that Greene owned a brown, double-barreled shotgun.
After questioning Greene, Investigator Bynum secured a search warrant for Greene's cell phone to see whether he could exclude Greene as a suspect based on the timeline Greene gave him during questioning. Once he received Greene's cell-phone records, Investigator Bynum forwarded them to the Regional Organized Crime Information Center ("ROCIC") in Nashville, Tennessee, to retrieve maps and digital evidence based on the records provided. After receiving this requested information *757 from ROCIC, Investigator Bynum secured a warrant for Greene's arrest for attempted murder.
Later, after securing another search warrant for Greene's residence, Investigator Bynum conducted a search of Greene's house during which he found two cell phones. He later obtained two more search warrants for extraction of the data from each phone and then contacted Special Agent Jake Frith with the Attorney General's Office to ask him to perform the extraction. At trial, Special Agent Frith testified that he reviewed Greene's telephone records and compared them with a map showing the various towers off which calls from Greene's number "pinged" on the night of the shooting. This data revealed that three phone calls from Greene's number were made that night and that these calls "pinged" off cell towers near the crime scene.
On June 17, 2014, a Dale County grand jury indicted Greene for the attempted murder of Head, see §§ 13A-4-2 and 13A-6-2, Ala. Code 1975. On July 14, 2014, Greene waived arraignment and entered a plea of not guilty.
The case was initially set for trial on September 8, 2014, but was continued several times at the request of either the State or Greene for various reasons. On November 10, 2015, Greene requested another continuance because of the unavailability of his expert witness. This request was granted on November 12, 2015, and a trial date was set for February 22, 2016. A week later, Greene filed a speedy-trial motion pursuant to the Sixth Amendment to the United States Constitution, which motion the circuit court granted.
On February 16, 2016, approximately one week before trial, the State submitted to the court its intent to introduce the certificate of records from a custodian of telephone records at Verizon Wireless and attached a copy of the certificate. This certificate of records stated it was specifically for copies of Greene's cell-phone records obtained by Investigator Bynum; those records, however, were not attached to the certificate.
That same day, Greene's appointed defense counsel notified the circuit court that he had learned that Greene's expert witness would not be available for trial because the expert's employer was refusing to permit the expert to testify because of the State's failure to pay for the expert's services in an unrelated case. Greene then asked for an additional continuance to allow the defense time to secure another expert witness. This matter was set for a hearing on February 18, 2016, after which the circuit court denied the defense's request for a continuance. On February 19, 2016, the circuit court appointed Joseph Gallo to represent Greene as cocounsel, and Greene, once again, asked the circuit court for a continuance, this time to allow Gallo more time to prepare for trial. The circuit court denied Greene's request.
On February 22, 2016, this matter was tried by a jury in the Dale Circuit Court. On February 26, 2016, the jury returned a verdict finding Greene guilty of the lesser-included offense of assault in the second-degree, § 13A-6-21, Ala. Code 1975. Greene filed a motion for a new trial on April 12, 2016, which was denied on May 12, 2016. On May 18, 2016, Greene filed his notice of appeal.
Discussion
Greene argues that the circuit court abused its discretion when it denied his request for a continuance after the expert witness he had hired announced one week before trial that he would not be available to testify. (Greene's brief, p. 20.) Specifically, Greene contends that the circuit court's denial violated his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to equal *758 protection under the law and was erroneous based upon the guidelines found in Dove v. State, 178 So.3d 889, 891 (Ala. Crim. App. 2014). (Greene's brief, pp. 20, 24.)
In Alabama, the trial court has discretion in determining whether it should "halt or suspend the trial to enable a party to secure or produce [a] witness in court." Alonzo v. State ex rel. Booth, 283 Ala. 607, 610, 219 So.2d 858, 861 (1969). "And, in the exercise of that discretion, the trial court is not to be reversed save for gross abuse of discretion." Id.
One week before his February 22, 2016, trial, Greene filed a motion for a continuance after his expert witness informed him that he would not be testifying at Greene's trial. (C. 75.) According to Greene, the expert's employer was refusing to permit him to testify because the State had failed to pay him for his services in an unrelated case. (Greene's brief, p. 22; C. 75.) A hearing on Greene's motion was held on February 18, 2016, and the circuit court issued an order denying the motion that same day. (Supp. IV: R. 1-8; C. 78.)
At this hearing, Greene's counsel made the following argument:
"MR. ROBINSON: I'm asking the Court for additional time to locate and retain an expert. They are hard to find, but I will diligently seek a method of doing that .... Furthermore, Judge, this is not a case where the State's expert's testimony is cumulative in any manner whatsoever. This is a circumstantial evidence case and there is very little evidence at all against my client Mr. Greene. The cell tower evidence is crucial and critical to the State's case and my ability to confront and question that evidence is also crucial and critical to the defense. The case in its entirety rests upon the testimony and believability of the science that's involved in cell tower evidence, Your Honor. It's not a case where there are other evidence linking Mr. Greene in any way to this trial. I would ask that you continue the case for the defense for at least one term so that I could properly represent Mr. Greene."
(Supp. IV: R. 2-4.) In response, the State argued that an expert was not needed because,
"[b]asically, Mr. Jake [Frith,] who was here from the [Attorney General's] Office takes cell phone records, figures out which cell phone tower that phones are pinging off of, then makes a map of how far that cell phone tower can go and it's showing that you have to be within that area to make a phone call that's going to ping off the roof of that tower. There's no science involved. I mean you literally just plug in the coordinates of the cell phone towers and you have information from the cell phone companies, the records that you subpoena, showing how far these towers can go. There's no opinions involved, there's no science to it, but you're literally just taking the record and going off of what they say."
(Supp. IV: R. 5.) Greene's counsel responded to the above statement, by arguing as follows:
"MR. ROBINSON: In response, Your Honor, in my examination of this field of science, which is certainly not complete or comprehensive, almost every case that I've looked at where experts testified for both sides, the maps were modified as the result of the defense expert testimony. If we take these numbers provided from the cell company and we plug them into-well, we've got to plug them into something, some computer program that somebody somewhere has designed, and some of them work better than others and some of them have a large rate of error and some of them have a small rate of error and I certainly *759 can't testify as to what value any particular computer program to analyze this data might have .... Mapping is not necessarily simple, but somebody has to plug in and record these scientific tests and this scientific data and to analyze it and have some opinion about it."
(Supp. IV: R. 6-7.)
Because the State sought to show that Greene was in the vicinity of the shooting based on which cell tower "pinged" when he made three telephone calls on the night Head was shot, Greene argues that a defense expert's testimony would have provided an alternate analysis or interpretation of this data and was, therefore, necessary. (Greene's brief, pp. 25-26; R. 188-89.) Relying on Dove v. State, 178 So.3d 889, 891 (Ala. Crim. App. 2014), Greene contends that the denial of his motion for a continuance was an abuse of the circuit court's discretion and struck a significant blow to his ability, and his right, to present a defense. (Greene's brief, p. 23.) We agree.
In Dove, a defendant filed a motion for a continuance one week before his trial after he was informed by the Alabama Department of Forensic Sciences that the test results from the analysis of fingernail scrapings from his alleged victim would not be available by the date trial was set to begin. 178 So.3d at 890-91. The trial court denied this motion. We reversed the judgment of conviction, holding that the trial court abused its discretion. Id. at 892. In reaching our decision, we applied the following three factors the Alabama Supreme Court articulated in Ex parte Saranthus, 501 So.2d 1256 (Ala. 1986), for when a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: " '(1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence.' " 178 So.3d at 891 (quoting Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986) ). We examine Greene's argument in light of these three factors.
First, additional expert testimony interpreting and analyzing Greene's cell-phone records and cell-tower data would have been material and competent in this case. "[M]aterial evidence has been defined as '[e]vidence which has an effective influence or bearing on questions in issue.' " Dove, 178 So.3d at 892 (quoting Black's Law Dictionary 976 (6th ed. 1990)). "Simply put, a 'material' fact is one that would matter in the trial on the merits." Smith v. State, 698 So.2d 189, 205 (Ala. Crim. App. 1996), aff'd, 698 So.2d 219 (Ala. 1997) (internal citations omitted)). " 'Competent evidence' is evidence that is admissible and material and relevant to the fact sought to be proved." Dove, 178 So.3d at 892.
Here, a review of the record shows that there was little physical evidence or eyewitness testimony placing Greene at the scene of Head's shooting. In fact, the bulk of the State's case centered on historical call data derived from Greene's cell-phone records. During the hearing on Greene's motion for a continuance, the State tried to minimize the role of expert testimony in interpreting this data by asserting that "there's no science involved," "no opinions involved," and that "it's not even an expert field." (Supp. IV: R. 5-6.) The State's reliance on its own expert's testimony analyzing and interpreting this data, however, suggests otherwise.
Additionally, the circuit court, following a pretrial hearing to determine the admissibility of the State's expert's testimony, determined that the information contained in those records was "beyond the knowledge or experience possessed by lay persons" and found Special Agent Frith to be an expert witness on the matter. (R. 5-6.) Thus, the circuit court concluded that the *760 analysis and interpretation of those records required expert testimony.
Because the State sought to show that Greene was in the vicinity of the shooting based on which cell tower "pinged" when he made a cellular telephone call, the materiality of this evidence is clear in this case. The testimony that Greene expected his expert witness to give would have provided a different interpretation and analysis of the data discussed by the State's expert. Most importantly, such testimony could have called into question the State's allegation that Greene was in the area at the time Head was shot. Because such testimony would have been material and competent, the first factor from Dove is satisfied here.
Second, the probability that the evidence would have been forthcoming if this case had been continued weighs in Greene's favor. During the February 18, 2016, hearing on Greene's motion, Greene's counsel assured the circuit court that, if given additional time to locate and retain an expert, he would "diligently seek a method of doing that." (Supp. IV: R. 4.) Greene's counsel further assured the circuit court that, if he could not do so, he would seek to have a copy of a transcript in a similar case in which he and the expert were involved and in which the expert directly refuted the State expert's interpretation of cell-phone data. (Supp. IV: R. 4.) He believed that doing so would "be a great help to the defense in cross-examining the experts that we expect [the State] to call." Id.
Additionally, the record shows that Greene provided the State and the circuit court with copies of the curriculum vitae for one other possible expert witness. (C. 66-71.) Notably, this curriculum vitae listed numerous cases in which the expert had served as a defense expert witness and provided alternate testimony interpreting cell-phone-record data. (C. 66.) Although this additional expert was from the same company as Greene's expert and, therefore, could have also been prevented by that company from testifying at trial, we believe this further shows that Greene's counsel was making an effort to procure an expert witness for Greene's trial. Under these circumstances-in which Greene's counsel presented the reasonable probability of procuring either a new expert witness or a transcript of testimony from an expert witness to assist Greene's defense-the second Dove factor weighs in Greene's favor.
Finally, it was through no fault of Greene's that his expert witness's employer chose not to provide the expert for Greene's trial. During the hearing on Greene's motion, defense counsel explained that the expert witness's employer, Cherry Biometrics, sent an expert to Jefferson County to testify four months earlier in a separate case but had yet to receive payment by the State of Alabama and was, therefore, unwilling to incur additional costs for Greene's case knowing the delay of payment was indefinite. (Supp. IV: R. 3.) After this occurred, Greene's counsel immediately notified the circuit court and stated that he would do everything he could to secure another expert witness. Id. In light of these circumstances, we believe that Greene's counsel exercised due diligence in securing an expert witness for his trial. Thus, the factors set forth in Dove all weigh in Greene's favor.
As noted above, a trial court's ruling on a motion to continue will be reversed only when the ruling constitutes an abuse of discretion. See Sullivan v. State, 939 So.2d 58, 66 (Ala. Crim. App. 2006) (citing cases in which the denial of a motion for a continuance was held to be an abuse of discretion). Additionally, this Court has previously held that, because
" '[t]he matter of continuance is traditionally within the discretion of the trial *761 judge, it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954). There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957) ; Torres v. United States, 270 F.2d 252 (9th Cir. 1959) ; cf. United States v. Arlen, 252 F.2d 491 (2d Cir. 1958).' "
Sullivan v. State, 939 So.2d 58, 66-67 (Ala. Crim. App. 2006) (quoting Ungar v. Sarafite, 376 U.S. 575, 589-90, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964) ). In the case before us, Greene's request for a continuance was justifiable because he did not learn that his expert would be unavailable until a week before trial, and he immediately informed the circuit court of that fact. As a result, Greene was left without expert assistance to rebut the State expert's testimony on cell-tower data. Because the State's case-in-chief relied so heavily on expert interpretation and analysis of this data in placing Greene near the scene when Head was shot, securing a defense expert to provide an alternate analysis of this data was critical for Greene's defense.
We recognize that the circuit court expressed concern over the length of delay in bringing the case to trial-indeed, the circuit court noted, in denying the motion to continue, that it had granted Greene's speedy-trial motion. (Supp. II: R. 8.) Given the importance of expert testimony in this case and the fact that Greene requested the continuance after requesting a speedy trial, we think the circuit court's concerns about the speedy-trial motion were not a sufficient reason to justify denying Greene's motion for a continuance. Accordingly, the circuit court, under the circumstances of this case, abused its discretion by denying Greene's motion due to the unavailability of his expert witness.
Furthermore, the circuit court's denial of Greene's motion for a continuance was not harmless error. The harmless-error rule provides, in pertinent part:
"No judgment may be reversed or set aside ... for error as to any matter of ... procedure ..., unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
Rule 45, Ala. R. App. P. In Hinton v. Alabama, the United States Supreme Court addressed the importance of a defendant's right to rebut the testimony of a State expert by retaining his own expert in the following manner:
"Prosecution experts, of course, can sometimes make mistakes. Indeed, we have recognized the threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution forensics experts, noting that '[s]erious deficiencies have been found in the forensic evidence used in criminal trials .... One study of cases in which exonerating evidence resulted in the overturning of criminal convictions concluded that invalid forensic testimony contributed to the convictions in 60% of the cases.' Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319, 129 S.Ct. 2527, 174 L.Ed. 2d 314 (2009)
*762 (citing Garrett & Neufeld, Invalid Forensic Science Testimony and Wrongful Convictions, 95 Va. L. Rev. 1, 14 (2009) ). This threat is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses...."
571 U.S. ----, 134 S.Ct. 1081, 1089, 188 L.Ed.2d 1 (2014).
Here, the State's case hinged on the interpretation and analysis of Greene's cell-phone data. A different expert could have had a different opinion regarding the interpretation of cell-tower data, how cell towers are mapped, and how tests are conducted, and Greene should have been given an opportunity to secure an expert who could have presented such testimony. Because the circuit court denied his motion for a continuance, however, Greene was unable to do so. This error injuriously affected Greene's right to present a defense and was, therefore, not harmless.[1]
Conclusion
A circuit court's discretionary ruling on a motion for a continuance is reversed only on rare occasions. The circumstances of this case present one of those rare occasions. For the reasons discussed herein, we conclude that the circuit court abused its discretion when it denied Greene's motion for a continuance based on the unavailability of his expert witness. Accordingly, we reverse the judgment of the circuit court and remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Windom, P.J., and Welch, Kellum, and Burke, JJ., concur.

Our resolution of this issue pretermits any need for deciding the remaining issues Greene raises on appeal.