Certiorari was granted to review the affirmance of the judgment of conviction of the petitioner, Donald Saranthus, for the offense of theft of services in the second degree.
Petitioner's primary argument is that the trial court abused its discretion in not granting his motion for a continuance.
In upholding the denial of the motion for continuance, the Court of Criminal Appeals stated: "Neither defendant nor his attorney gave any clear reason why the case should be continued or for the delay in invoking such ruling until after a jury had been selected to try the case."
Six cases, including the instant one, were pending against Petitioner and were docketed for trial on May 2, 1984. According to the motion for continuance filed by Petitioner's attorney, Linda Perry, the state's attorney, Robert McGregor, had represented to her that the state would not try the instant case on May 2, but would proceed on three of the other cases. Perry says she relied on McGregor's representations and prepared for the other cases. The motion goes on to state that two days before trial McGregor informed Ms. Perry's office that the instant case, not the others, would be tried on May 2. At a bench conference on the motion for continuance, Petitioner testified that he needed time to subpoena two witnesses who would *Page 1257 
give evidence tending to clear him of the charge.
Perry represented to the court that Petitioner's case would be prejudiced should it proceed to trial at that time. She cited her failure to prepare for this particular case and her failure to secure the presence of the witnesses mentioned by her client.
A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v.State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32,95 So. 481, 485-86 (1923).
To determine whether the trial court abused its discretion, we review the facts with these guidelines in mind.
First, would the testimony, as described by Petitioner, be material and competent? We must bear in mind that in making this determination the trial court does not pass on the weight which should be accorded the expected evidence. The court should only consider the materiality and competence of the evidence.
Petitioner was charged with intentionally obtaining services without paying for them, by registering in a motel under a false name and leaving with his bill unpaid. The testimony which Petitioner expected his witnesses to give would show that he was staying at the motel with the understanding that another party would be responsible for the bill and that this other party gave money to Petitioner's ex-wife with the understanding that she would pay the bill. The materiality of this evidence is evident. Such testimony would directly rebut the State's allegation that Petitioner intended to defraud the motel of its services.
As to the competence of the evidence, there is nothing in the record to suggest that the witnesses would not be competent to testify to the evidence they allegedly would give.
Second, was there a probability that the testimony would be forthcoming? During the arguments on the motion, McGregor stated that the two witnesses were non-existent. If the trial court were entitled to give this statement any weight, the court might have been within its discretion in denying the motion. There was no indication, however, of the basis on which McGregor made this statement. No questions were put to him regarding his assertion. The trial court should not have presumed that he had personal knowledge of the nonexistence of these witnesses, especially in light of numerous other conclusory, speculative statements made by the state's attorney.[1] McGregor's statement that the witnesses did not exist, standing alone, was not competent evidence and the trial court should have accorded it no weight whatsoever. Especially should the trial court have discounted this statement in light of the charge by Ms. Perry that the actions of the state's attorney in misleading her had caused this problem in the first place.
There is nothing else in the record bearing on the existence of the two witnesses. We see no reason why the representations of Petitioner should have been doubted or why it would have been reasonable to expect that the two witnesses would fail to appear and give testimony if they were notified or subpoenaed.
Third, the diligence of the moving party is to be considered. Perry represented to the trial court, via the motion for continuance, that she had subpoenaed witnesses *Page 1258 
and was ready to defend the cases that the prosecutor had assured her would be tried that day. It would seem that Perry's only failing was in her reliance on the assurances of McGregor.
In reviewing the record, we note at least four separate instances where Ms. Perry stated to the trial judge, in the presence of McGregor, that McGregor had misled her. McGregor's sole response to this charge appears in the first argument on record before Judge Mashburn. Judge Mashburn asked the parties if they had discussed the motion with Judge Hodnette (the presiding judge). Ms. Perry repeated her charge of having been misled by McGregor. This response followed:
 "MR. McGREGOR: For purposes of clarifying the record, Your Honor, [Judge Hodnette] added that neither myself nor the district attorney's office sets the docket; that he, Judge Hodnette, sets the docket; that all cases pending against Mr. Saranthus were on today's docket; and that he made the decision that case number 83-3235 — which is the case for which a jury has been struck — would be the case tried today."
The trial court could not properly rule on petitioner's motion without first determining whether the state's attorney in fact had misled counsel for the defense. Yet the court made no such determination. McGregor at no time denied Ms. Perry's allegations.
It is not enough to say that defense counsel knew that the six cases against Petitioner were docketed for May 2, 1984, and that she should have been prepared for all six. It is commonplace for the trial court to defer to the state's attorney in choosing which cases will be heard first.
In affirming the judgment of the lower court, the Court of Criminal Appeals relied in part on the "delay in [moving for a continuance] until after a jury had been selected." After a study of the record, it becomes clear that Ms. Perry did not delay in filing her motion until after the jury had been selected. In fact, the record indicates that the instance to which the Court of Criminal Appeals refers was the third time that Ms. Perry put her motion before the court.
The following excerpt appears in the record just prior to the portion quoted by the Court of Criminal Appeals, and shortly after the portion showing the impanelling of the jury:
 "THE COURT: Let the record show that Judge Hodnette — This case was on Judge Hodnette's docket, that he called the docket, that he came to me and told me that he was sending the case up here to be tried, that Ms. Perry and Mr. McGregor came up here, that after they were here Ms. Perry came in to see me and said that there's been — that the State had told her that they intended to try another case against her client and that they'd come up this morning and were trying this case, and that she was not prepared to try it. I told her at the time that seemed to me to be a matter to be taken up with Judge Hodnette at the time he called the docket, and that I wasn't prepared to rule on whether she was entitled to a continuance, since she hadn't cleared the matter with him. He'd sent the case to me — a special judge here who has been sent to this court to try cases assigned to me by the presiding judge.
"Did y'all go back down to Judge Hodnette then?
"MR. McGREGOR: Yes, sir, Your Honor. We did.
 "MS. PERRY: Yes, but see, Judge, I was never present. Initially, I was in court — I checked in with Aleen, Judge Hodnette's secretary, and told her I had to go up in courtroom two; they were hunting me down. And —
 "THE COURT: But, when you left here did you go back down there and talk to Judge Hodnette then?
 "MS. PERRY: When I went back — Okay, when I went back down, they told me to come up to you, that the case had been sent to you. Then we went back down to Judge Hodnette, and I told him that Mr. McGregor had told me there *Page 1259 
was no way we were going to try this case today — that they would not be ready on this case today — and all the things contained in the written motion. And then he said that he was sorry but we were going to go to trial today."
Thus, it appears that Ms. Perry had already made her motion earlier that morning, that she had presented it again before Judge Hodnette, and that she was merely renewing her motion on that occasion relied upon by the Court of Criminal Appeals in its opinion.
For the foregoing reasons, the trial court's denial of the continuance was an abuse of discretion. The Court of Criminal Appeals therefore erred in affirming the judgment of the trial court.
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Justices concur.
[1] For example: "Your Honor, Mr. Donald Saranthus has never been employed at any airport; he never knew Ms. Barbara Rouse. . . . Judge, what is going to happen in here is what has happened every time this man has been brought to trial. He concocts the wildest stories that you can possibly imagine."