McMILLAN, Judge.
The appellant was convicted of second degree arson, in violation of § 13A-7-42, Code of Alabama (1975), and was sentenced to 25 years’ imprisonment and ordered to pay $24,925.79 in restitution. He appealed the conviction and this court reversed on August 12, 1986. Carr v. State, 495 So.2d 714 (Ala.Cr.App.1986). Following a new trial, the appellant was again convicted of second degree arson. He was again sentenced to 25 years’ imprisonment and again ordered to pay $24,925.79 in restitution. He now appeals that second conviction.
Willie Mae Alford testified that on the day of the fire she lived in the rear of her store. She testified that she had been involved in a relationship with the appellant for two or three years. She stated that she had broken up with him about six to eight months before the fire because he disrupted her business and allegedly attempted to have sex with her friends and relatives. Thus, the appellant moved out of her house several months before the fire. She further testified that after they broke up, the appellant would come to the store and make threats and harass people. She further testified that the appellant had previously made threats to burn her down.
*662 Willie Mae Alford stated that on the morning of the fire the appellant began arguing and pulling items off of the shelves and walls. The appellant refused to stop, so Willie Mae Alford left the store in order to telephone the police. She was told that she would have to sign a warrant for harassment, which she did. She testified that the appellant returned to her store later in the afternoon and threatened to “burn her.” She returned to police headquarters and signed another warrant for harassment. She then closed her store and went to her sister’s house. She later received a telephone call and was told that her store was burning and that the firemen had been called.
Willie Mae Alford further testified that the appellant telephoned her after the fire and told her that he had burned down the store and made threats to burn it again as well as anywhere else she might live.
Alford’s niece testified that she was working in the store on the day in question. She stated that when the appellant returned to the store after the first confrontation, he threatened to blow her up, to blow up the store, and to burn everyone inside.
Alford’s sister testified that she was present in the store on the night of the fire. She stated that the appellant threatened to bum down the store and house, as well as anyone inside. He was throwing things around the store and using profanity. She further testified that she threw an ash tray at him when he “started” towards her. When they got him out of the store, they closed shop and ran to her house, because they were afraid. While at her house, they received a telephone call from someone who told them that the appellant was back at the store on his motorcycle and that the store was on fire.
Laura Stoudamire testified that she lived across from Willie Mae Alford’s store. She testified that she went to the store around 9:30 or 10:00 p.m., but that it was closed. She observed a motorcycle parked close to the front door and telephoned Willie Mae Alford at her sister’s house. She identified the appellant’s motorcycle as the one she had seen.
Captain Tommy Graham, an inspector for the Montgomery Fire Department, testified that he conducted an investigation to determine the cause of fire. He determined that the fire started outside the door to the store and was caused by a flammable liquid. Captain Graham testified that he conducted a follow-up investigation, took statements, and assisted in the arrest of the appellant five or six hours after the fire.
The appellant argues that the trial court erred in denying his motion for continuance in order to obtain the testimony of certain witnesses.
“A motion for continuance is addressed to the discretion of the court and the court’s ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923).”
Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986).
The federal courts have fashioned a more detailed list of considerations:
“[T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which, such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony.”
Hicks v. Wainwright, 633 F.2d 1146, 1149 (5th Cir.1981), quoting United States v, Uptain, 531 F.2d 1281, 1287 (5th Cir.1976). Although the Fifth Circuit Court of Ap *663 peals in United States v. Uptain, at 1287, also stated that the defendant must make a showing that the desired witness is “willing to testify”, the Alabama Supreme Court has rejected this consideration and has noted that it is absent from more recent Eleventh Circuit decisions. Ex parte Goodwin, 516 So.2d 821 (Ala.1987).
The record indicates that on October 24, 1986, a bond hearing was held in which defense counsel stated that, in relation to setting a time for trial, there were some witnesses that were discovered after the first trial who had since become “extended around Alabama.” The trial was set for December 1, 1986. Prior to the striking of the jury, the judge held a hearing in his chambers in which defense counsel noted that he was not prepared for trial:
“[Defense Counsel]: The defendant came into this court and asked for extraordinary expenses about three weeks ago because the court had set the bond of Grady Carr at $30,000 which was extravagant.
“THE COURT: I thought it was $25,000, [Defense Counsel].
“[Defense Counsel]: Thirty thousand dollars. At that time I asked the court to give me money for extraordinary expenses to get an investigator to find two missing witnesses; two witnesses who were eyewitnesses to the case. They had signed affidavits in 1984 stating emphatically that my client was not the defendant.
“THE COURT: You mean that your client was not the culprit, don’t you? “[Defense Counsel]: The guilty party; yes. That they had seen the person that was there, that Laura Stoudamire was their sister and aunt, and that Laura Stoudamire had lied at trial, and that Laura Stoudamire had not informed the fire marshal of these two witnesses though she knew of their existence. Furthermore, at the time of the discovery of these two witnesses back in 1984, the district attorney and the fire marshal were both asked to go out there and help this defense attorney take statements from these people, from these two missing witnesses, and the district attorney refused.”
Thereafter, defense counsel presented the testimony of an investigator who had been hired to locate the two witnesses. He was also a process server for the two witnesses. The investigator, after he was alloted the funds provided by the court, noted that he had been working on this case for approximately eight to ten days. He had spoken to approximately six people and located an individual who had access to the witnesses’ addresses. He stated that he believed he could locate a witness if he was given another week. Defense counsel then asked for a continuance of a week, stating, “To give our investigator one week would not infringe on this court any grievous time problem. That would enable the defense to present more than an adequate defense and to be able to show the complete innocence of the defendant.” The trial judge denied defense counsel’s request, noting that he had had four months for research and investigation and that he believed his request was “nothing more than a fishing expedition.” Defense counsel then asked to admit two sworn statements of the witnesses which were in the original record as a showing of the subject matter of the witnesses’ testimony. The trial court denied the motion.
On appeal, defense counsel submits that the expected testimony of the two witnesses would have been that Laura Stoudamire did not see the motorcycle just prior to the time of the fire, but, rather, that a Vera Mae Jackson had seen the motorcycle, and, further, that Vera Mae Jackson and Lorraine Harris had seen the person who burned down the house, as did Laura Stou-damire, and it was not the defendant. He argues that the expected testimony was unique and favorable to the accused; that the investigator identified the person who knew of the witnesses’ location; that the witnesses could be located and served in only one week; and that he had exercised due diligence in attempting to locate the witnesses.
The State argues that the defense counsel had known about the witnesses for the past four months and, thus, did not exer *664 cise due diligence. In arguing that he did exercise due diligence, defense counsel outlines the following facts:
“A. This Court [Alabama Court of Criminal Appeals] issued its Certificate of Judgment on Reversal on September 24, 1986.
“B. The Trial Court issued an order to the Montgomery Sheriffs Department on October 8, 1986 for Appellant’s return. Appellant was placed on a no bond status.
“C. On October 16, 1986, Appellant filed a motion to set bond instanter alleging as one of the grounds the need of the Appellant to be free to help locate witnesses.
“D. The Court did not have the hearing until October 24, 1986.
“E. On November 3, 1986, the Trial Court issued two orders, one quadrupling the original bond of $75,000 and the second setting a trial for December 1, 1986.
“F. On November 10, 1986, Appellant filed a motion for $500 for extraordinary expenses to hire an investigator on the grounds of the high bail set by the Court and the hostility of State witnesses and the Court and the hostility of the State witnesses and the length of time since the incident. The Court granted only $175.
“G. Over the next two weeks Appellant’s attorney subpoenaed and interviewed ten witnesses and the investigator interviewed six witnesses.
“H. On November 24, 1986, the location of the two key witnesses was traced to a State official with the Department of Human Resources.
“I. Appellant’s attorney requested that the investigator be made a process server.
“J. On November 26, 1986, Appellant moved for a continuance based on the absent witnesses and the prior illness of counsel.
“The Court did not hear the motion until the morning of the trial December 1, 1986.”
The United States Supreme Court has addressed the subject of whether a denial of a motion for continuance constitutes a violation of due process in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849-850, 11 L.Ed.2d 921 (1964), as follows:
“The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.” (Citations omitted.)
See also Hicks v. Wainwright, 633 F.2d 1146, 1148-49 (5th Cir.1981).
“A court may not ... refuse to grant a reasonable continuance for the purpose of obtaining defense witnesses where it has been shown that the desired testimony would be relevant and material to the defense. Hicks v. Wainwright, 633 F.2d 1146 (5th Cir.1981); Singleton v. Lefkowitz, 583 F.2d 618 (2d Cir.1978).” Dickerson v. Alabama, 667 F.2d 1364, 1370 (11th Cir. 1982), cert. denied, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982). In making the determination of whether the testimony would be material and competent, “the trial court does not pass on the weight which should be accorded the expected evidence. The court should only consider the materiality and competence of this evidence.” Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala.1986). The testimony of the two witnesses in the case sub judice would clearly be material and competent. It would not be cumulative as to any other witness’s testimony. The defense counsel has shown a probability of procuring their testimony within a reasonable time and has shown that he acted with due diligence in attempting to secure their testimony. For these *665 reasons, we find that the trial court abused its discretion in denying the appellant’s motion for continuance.
REVERSED AND REMANDED.
All the Judges concur.