Tommy Ray Glass was convicted of an attempt to possess controlled substances, in violation of §§ 13A-12-212 and 20-2-162,[1] 1975 Code of Alabama. He was sentenced to 15 years' imprisonment. He raises three issues on this appeal of that conviction, one of which necessitates a reversal and remand for a new trial. We need not address the remaining issues, since they are unlikely to arise on retrial.
The State's evidence indicated that on the evening of April 16, 1989, the defendant entered a Revco drugstore and presented the pharmacist, Mr. Mike Carmack, with a prescription to be filled. The prescription was for a "Jessie Oliver," who, defendant told Carmack, was his wife. Carmack testified that he doubted the validity of the prescription because, although he recognized the doctor's handwriting, the prescription was written for two different drugs on the same form and the prescription for each drug was in a different handwriting. Carmack told the defendant that he would have to call the physician to verify the prescription. He left the counter to do so and, when he returned, the defendant was gone.
On cross-examination, Carmack denied that a "blond-headed lady" had passed him the prescription, and he reiterated his statement that the defendant had personally handed him the prescription. Carmack stated that he had not written anything on the prescription form and, when questioned about who had filled in on the form the address as "3229 Yarbrough" and the word "None" to indicate no telephone, he stated that he did not know. Carmack testified that a clerk, Jody Young, was the only other employee working in the store on the night the defendant presented the prescription.
Jody Young testified as a witness for the defense. She stated that she had checked her time cards and had found that she was not working at Revco on the night in question. She described the procedure followed at Revco "whenever somebody comes in with a prescription and presents it" as follows: the prescription holder gives the prescription form to one of the clerks behind the counter, who then makes sure that the form contains an address and telephone number. If it does not, the clerk writes in the address and, if there is no telephone, the clerk inserts the word "none" at the proper place on the form. The clerk then puts the form in a bag labelled with the prescription holder's name, sets the bag on a shelf, and the pharmacy "takes it from there."
Ms. Young examined the prescription in this case, and stated that it included an address and the word "None," both written in blue ink and in a different handwriting from the rest of the writing on the prescription, which was in black ink.
Prior to Ms. Young's testimony and following a noon recess, defense counsel *Page 847 
moved for a continuance in order to have two witnesses subpoenaed for the defense. Counsel informed the court that when he interviewed Ms. Young prior to trial, she told him that she had been working at Revco on the night of April 16, but that she did not remember the incident. Then, on the day of trial, Ms. Young told him that she had checked her records and he said that she had not worked on the night in question. She gave defense counsel the names of the two clerks, Ms. Johnnie Pettaway and Ms. Angela Williams, who were working on the evening of April 16.
Defense counsel told the court that during the recess he had contacted the manager of Revco in an effort to locate the two clerks, but that the manager had refused to give him any information regarding their whereabouts, stating only that they were scheduled to work the following day. Counsel then moved for a continuance, requesting that subpoenas be served on Pettaway and Williams at the Revco store the next day and stating that from their testimony he expected to prove the following:
 "Judge, we believe that they're going — and we'll be able to show through them — that it was a woman who offered this prescription; that one of those women-one of these two ladies, either Johnnie Pettaway or Angela Williams, took the prescription and wrote down the address that appears on State's Exhibit 1, which is something — I think it's [3]229 Yarbrough and none, meaning no phone number; that one of the girls work[ing] behind the counter did that, and then gave the prescription to Mr. Carmack. We believe that they can demonstrate that his recall of Mr. Glass handing him the prescription is incorrect because he is — Miss Young is going to testify that he's incorrect in what he recalls about her being the only person working with him that night. She was not working that night, and her time card demonstrates that.
". . . .
 "I think it's imperative to get to the bottom of this since I'm showing that Mr. Carmack may be mistaken in his belief or in remembering what exactly happened by showing that Jody Young was not there. I think it's — and plus combining that with the 4220, whatever it is, on Yarbrough Street which appears to be written in a feminine handwriting different than everything else on the prescription. I think it's important that we be able to get Miss Pettaway and/or Miss Williams, whichever of the two of them or both of them that were working in here, to straighten out any — beyond all reasonable doubt any problems that may — concerning whether or not a woman passed this because that's our contention, that a woman did pass this prescription, not Mr. Glass. And I think I can show that with these ladies' testimony. What it's going to basically involve is I can't get the information from Revco so my only other alternative is this afternoon to ask the sheriff to go out there with a subpoena and serve them tomorrow when they're working and have them come back down here to testify sometime in the morning."
The trial court denied the request for a continuance, stating that "it is evidence that could have been discovered prior to now, and I'm not going to delay this trial any further. . . . [I]t's my job to get the thing to a conclusion sometime this year, and we're going to get it to a conclusion, not only this year, today." The following exchange also occurred:
 "THE COURT: You announced ready, [defense counsel]. You did not tell me this morning that you had not had time to prepare this case.
 "[Defense Counsel]: I did not know about this testimony . . . this morning, and —
 "THE COURT: Well, you shouldn't have announced ready. I'm not going to sit here and argue with you forever."
In Ex parte Saranthus, 501 So.2d 1256, 1257 (Ala. 1986), our Supreme Court set out the following test for determining whether a continuance should be granted on the ground of an absent witness:
 "A motion for continuance is addressed to the discretion of the court and *Page 848 
the court's ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882
(1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923)."
Because all three parts of the Saranthus test were met here, the trial court abused its discretion by denying the request for continuance.
First, the expected testimony of witnesses Pettaway and Williams, as outlined by defense counsel, would have been material and competent. Defendant proposed to show that one or both of these women were eyewitnesses to the incident and would testify as to who presented the prescription to Carmack. The fact that Carmack was definite in his testimony that defendant, and not someone else, had presented the prescription is not a basis for denial of the motion. "[T]he trial court does not pass on the weight which should be accorded the expected evidence. The court should only consider the materiality and competence of the evidence." Ex parte Saranthus, 501 So.2d at 1257 (emphasis added). See also Carr v. State, 533 So.2d 661
(Ala.Cr.App. 1988) (fact that absent witness's testimony would contradict another eyewitness's testimony not a ground for refusing continuance).
Second, since defense counsel had information that the witnesses could be served with subpoenas the following day at their place of employment, there was a probability of procuring their testimony within a reasonable time. Compare Reese v.State, 549 So.2d 148, 151 (Ala.Cr.App. 1989) (no showing that absent witnesses could be located; "[i]n fact all indications pointed to the contrary," since previous efforts of the State and the defense to locate them had been futile).
Finally, contrary to the trial court's conclusion, the record indicates that defense counsel acted with due diligence in attempting to secure the testimony of the witnesses he sought. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite,376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964).
Here, defense counsel's explanation to the trial court — that Ms. Young's belated discovery that she was not on duty during the incident prevented him from seeking out other eyewitnesses — was clear and specific, and it entitled him to a reasonable continuance to subpoena his witnesses. The trial court's "myopic insistence upon expeditiousness in the face of a justifiable request for delay . . . render[ed] the right to defend with counsel an empty formality." Ungar v. Sarafite,376 U.S. at 589, 84 S.Ct. at 849.
The judgment of the circuit court is reversed, and the cause is remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.
[1] Section 20-2-162 was transferred to § 13A-12-203 effective September 30, 1988. 1988 Ala. Acts No. 88-918, p. 512, § 2(8). However, this has not been raised as an issue on appeal.