[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 66 
Dionne Eatmon was convicted of the murder of Allison Kile, made capital because it occurred during a kidnapping in the first degree, a violation of § 13A-5-40(a)(1), Ala. Code 1975; the murder of Rick Kile, made capital because it occurred during a kidnapping in the first degree; and murder made capital because Allison and Rick Kile were killed pursuant to one scheme or course of conduct, a violation of § 13A-5-40(a)(10), Ala. Code 1975. Eatmon was sentenced to death for each count.
The evidence adduced at trial tended to show the following. Late on the night of February 5 and into the early morning hours of February 6, 2004, Rick Kile and his wife, Allison, went to a house on Jesse Owens Avenue in Brighton, where it was known that drugs were freely used. People could purchase and/or smoke crack cocaine and marijuana at the house.
Eatmon, Aundra "Dra" Marshall,[1] and several other people were at the house when Rick came in. Allison waited in the car. Witnesses testified that Rick and Marshall began to argue over $200 Rick owed Marshall for drugs Rick had gotten earlier. Ollie Taylor, who was at the house when Rick and Marshall were arguing, testified that Marshall told Rick that he "didn't trust [Rick] no more, because [Marshall] had shot at Rick, and Rick had called the police and filed a report. So, he *Page 67 
wasn't taking no second chances with him no more, and he wanted his money right then and there." (R. 603.)
Rick and Marshall began fighting. Taylor said that "Rick had got the better of Aundra" (R. 603-4), and Marshall "hollered" for Eatmon to help him. Eatmon grabbed an iron bar used to bar the door and hit Rick twice. Rick stopped fighting and said he would get the money for Marshall. Marshall then made Rick sit on the floor.
Allison, who was still waiting in the car, blew the horn. Marshall told Steven Mayes and Rhonda "Molly" Wells, who were also visiting the house, to bring Allison into the house. The two brought Allison up to the house. Meanwhile, Marshall told Taylor to cut the electrical cord from a fan in the kitchen. Taylor brought Marshall the cord, and Marshall bound Rick's wrists behind his back.
Marshall led Rick down to the Kiles' car and put him in the trunk. Marshall went back into the house, where Allison was sitting on a couch praying. Marshall tied her hands with a cloth then led her to the car and forced her into the trunk with Rick. Rick then began to struggle, using his knees to prevent Marshall from closing the trunk. Marshall again asked for help from Eatmon, who again used the iron bar to beat Rick in the legs. Rick yelled out that he thought Eatmon had broken his legs and that he could not "hold on no longer." (R. 613.) Marshall then closed the trunk. After loading kerosene in the car, Marshall and Eatmon drove off in the Kiles' car with Rick and Allison in the trunk.
They parked the car on Watts Street in Brighton. Mattie Louise Thomas, who lives on Watts Street, testified that she was awakened by a loud noise before day-break on February 6, 2004. She said she looked outside and saw two young black men running up the street and a car burning at the end of the street.
After igniting the Kiles' car, Eatmon and Marshall went to another drug house on Watts Street and enlisted Sidney Nelson to drive them away from the scene. At trial, Nelson and another man at the Watts Street crack house, Julian "Fat" Lathan, identified Eatmon as one of the two men who came to the house early that morning looking for a ride.
The fire department arrived at Watts Street. After dousing the car fire, fire-fighters opened the trunk of the car and discovered two bodies, later identified as Rick and Allison Kile.
Dr. Gregory G. Davis, Jefferson County assistant medical examiner in the coroner's office, performed the autopsies on the Kiles. He testified that both Rick and Allison had injuries indicating they had been strangled, but their deaths were caused by a combination of assault and "inhalation of products of combustion" or carbon-monoxide poisoning. (R. 471-72.) Both bodies were severely burned.
Testing conducted by the Alabama Department of Forensic Sciences indicated that both Rick and Allison had been doused with gasoline. The inside of their car had been doused with gasoline on the driver's side and kerosene on the passenger's side.
Eatmon presented no evidence in his defense during the guilt phase of the trial.
 I.
Eatmon contends that the trial court erred in failing to grant his motion for a continuance, which he requested when Eatmon's mitigation expert told Eatmon's counsel he was unable to complete his evaluation in time for the trial. *Page 68 
 "`"A motion for a continuance is addressed to the discretion of the court and the court's ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923)."'
 "Fortenberry v. State, 545 So.2d 129, 138
(Ala.Crim.App. 1988)."
Ex parte Clark, 728 So.2d 1126, 1134 (Ala. 1998) (quoting Ex parte Saranthus, 501 So.2d 1256, 1257
(Ala. 1986)). See also Scott v. State, 937 So.2d 1065,1076 (Ala.Crim.App. 2005).
"`There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' Ungar v. Sarafite,376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964)."Glass v. State, 557 So.2d 845, 848 (Ala.Crim.App. 1990).
 "`The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires "a positive demonstration of abuse of judicial discretion." Clayton v. State, 45 Ala.App. 127, 129, 226 So.2d 671, 672 (1969).' Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979)."
McGlown v. State, 598 So.2d 1027, 1029
(Ala.Crim.App. 1992).
 "`[N]ormally, a reviewing court determines the correctness of a trial court's ruling "as of the time when it was made and according to what the record shows was before the lower court at that time."' Henry v. State, 468 So.2d 896, 899
(Ala.Cr.App. 1984), cert. denied, 468 So.2d 902
(Ala. 1985)."
Dozier v. State, 630 So.2d 137, 140 (Ala.Crim.App. 1993).
The record in this case shows that on the Friday before the trial began, after discussing proposed questions for a juror questionnaire, Eatmon's attorney informed the trial court that the defense might have a "potential issue," because the mitigation expert retained two months earlier had advised defense counsel that he had to have six months to prepare for trial. The attorney told the trial court that he had been able to obtain the telephone number of another mitigation expert, however, and he intended to contact her "to see if she is able to come on board and prepare. If not, then we will be asking for a motion to continue to allow our mitigation expert time to prepare his aspect of the case for the death penalty phase." (R. 62.)
The trial court questioned Eatmon's attorney about whether Eatmon had a learning disability, to which Eatmon's attorney responded, "Not that we know of." (R. 63.) The trial court then asked whether Eatmon had been sexually abused. The attorney did not directly answer the question, saying, "I think it's a matter of gaining the school records, contacting the witnesses, Judge, preparing them for their mitigation aspect, and knowing that it is a capital case and the co-defendant [Marshall] was given the death penalty regarding the mitigation aspect." (R. 63.)
The following Monday, the day trial was scheduled to begin, Eatmon's attorney reported *Page 69 
to the trial court that he had been unable to contact the mitigation expert he hoped to use in place of the initial expert he had retained, and he requested a continuance. The trial court denied the motion, noting that the motion for a mitigation expert had been approved two months earlier.
Nothing in the record indicates that defense counsel was aware of specific evidence to be used in mitigation in the penalty phase of the trial. From the comments of Eatmon's attorney to the trial court, it appears that the mitigation expert was expected to review Eatmon's school records and prepare witnesses to testify during the penalty phase — both of which could be ably accomplished by defense counsel without the need for an expert. Further, nothing in the record indicates that there was information in Eatmon's school records or in his past experiences that would provide a basis for a mitigating circumstance. In other words, Eatmon failed to show that he expected the mitigation expert to add any evidence during the penalty phase that would serve as a valid mitigating circumstance.
Furthermore, the record does not indicate when Eatmon's attorneys learned that the mitigating expert would need more time to prepare for trial. Defense counsel notified the court of a "possible issue" arising from the unavailability of their mitigation expert on the Friday before trial was scheduled to begin on Monday. Not until the morning trial was set to begin did Eatmon actually request a continuance. It strains credulity to think that defense counsel was not aware that the mitigation expert would not be available until the last business day before trial and was unable to bring the matter to the attention of the trial court before that time.
Based upon the record before us, we hold that the trial court did not abuse its discretion in denying Eatmon's request for a continuance.
 II.
Eatmon contends that the trial court erred in overriding the jury's advisory recommendation of a sentence of life in prison without parole. He asserts that Alabama's statutory scheme allowing for judicial override of a jury's recommendation of life imprisonment without parole violates Ring v.Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556
(2002), and Blakely v. Washington, 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (which was not a capital case involving the imposition of the death penalty), both of which applied the rule stated in Apprendi v. New Jersey,530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
The State correctly asserts that Eatmon did not raise this objection at trial and that the failure to object limits our review to searching for only plain error. Rule 45, Ala. R.App. P.
 "`Plain error' has been defined as error `"so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings."' Ex parte Womack, 435 So.2d 766, 769 (Ala. 1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir. 1981). `To rise to the level of plain error, the claimed error must not only seriously affect a defendant's "substantial rights," but it must also have an unfair prejudicial impact on the jury's deliberations.' Hyde v. State, 778 So.2d 199, 209
(Ala.Crim.App. 1998), aff'd, 778 So.2d 237 (Ala. 2000). This Court has recognized that the `"plain-error exception to the *Page 70 
contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'"' Burton v. State, 651 So.2d 641, 645
(Ala.Crim.App. 1993), aff'd, 651 So.2d 659 (Ala. 1994), quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), quoting in turn United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)."
Eggers v. State, 914 So.2d 883, 890-91
(Ala.Crim.App. 2004).
This Court has specifically rejected Eatmon's contentions that Alabama's statutory scheme, allowing a trial court to override a jury's recommendation of a sentence of life imprisonment without parole upon a defendant's conviction for capital murder, is unconstitutional.
In Brownfield v. State, [Ms. CR-04-0743, April 27, 2007] ___ So.2d ___ (Ala.Crim.App. 2007), we noted that in a number of opinions decided in the aftermath of Ring, both this Court and the Alabama Supreme Court concluded thatRing did not invalidate Alabama's death-penalty statute. See, e.g., Ex parte Hodges, 856 So.2d 936
(Ala. 2003); Ex parte Waldrop, 859 So.2d 1181
(Ala. 2002); Duke v. State, 889 So.2d 1, 41
(Ala.Crim.App. 2002) (opinion on return to remand), cert. granted, sentence of death vacated pursuant to Roper v.Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1
(2005), Duke v. Alabama, 544 U.S. 901, 125 S.Ct. 1588,161 L.Ed.2d 270 (2005); Turner v. State, 924 So.2d 737
(Ala.Crim.App. 2002); Stallworth v. State,868 So.2d 1128, 1178 (Ala.Crim.App. 2001) (opinion on return to second remand).
 "In recognizing the narrowness of the United States Supreme Court's holding in Ring, this Court has noted that although `[t]he Ring Court held that any aggravating circumstance that increased a sentence to death must be proved to a jury beyond a reasonable doubt,' the Ring Court `did not reach the question whether judicial sentencing or judicial override was constitutional.' Stallworth v. State, 868 So.2d [1128] at 1183
[(Ala.Crim.App. 2001)] (opinion on return to second remand). Further:
 "`"Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. No aggravating circumstance related to past convictions in his case; Ring therefore does not challenge Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), which held that the fact of prior conviction may be found by the judge even if it increases the statutory maximum sentence. He makes no Sixth Amendment claim with respect to mitigating circumstances. See Apprendi v. New Jersey, 530 U.S. 466, 490-91, n. 16, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (noting `the distinction the Court has often recognized between facts in aggravation of punishment and facts in mitigation' (citation omitted [in Ring])). Nor does he argue that the Sixth Amendment required the jury to make the ultimate determination whether to impose the death penalty. See Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion) (`[I]t has never [been] suggested that jury sentencing is constitutionally required.'). He does not question the Arizona Supreme Court's authority to reweigh the aggravating and mitigating circumstances after that court struck one aggravator. See Clemons v. Mississippi 494 U.S. 738, 745, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). Finally, *Page 71 
Ring does not contend that his indictment was constitutionally defective. See Apprendi 530 U.S., at 477, n. 3, 120 S.Ct. 2348, 147 L.Ed.2d 435
(Fourteenth Amendment `has not . . . been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury"')."'
"Stallworth v. State, 868 So.2d at 1183-84 (quotingRing, 536 U.S. at 597 n. 4).
"As the Alabama Supreme Court stated in Ex parteWaldrop:
 "`[T]he weighing process is not a factual determination. In fact, the relative "weight" of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof. As the United States Court of Appeals for the Eleventh Circuit noted, "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard . . . the relative weight is not." Ford v. Strickland, 696 F.2d 804, 818 (11th Cir. 1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which "the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence." Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. See Harris v. Alabama, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (rejecting "the notion that `a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required'" (quoting Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)) and holding that "the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer").
 "`Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. See California v. Ramos, 463 U.S. 992, 1008, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury[] then is free to consider a myriad of factors to determine whether death is the appropriate punishment."); Zant v. Stephens, 462 U.S. 862, 902, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (Rehnquist, J., concurring in the judgment) ("sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does").
 "`In Ford v. Strickland, supra, the defendant claimed that "the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment." Ford, 696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that "aggravating and mitigating circumstances are not facts or elements of the crime. Rather, *Page 72 
they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed." 696 F.2d at 818. Furthermore, in addressing the defendant's claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant's argument
 "`"seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. [1950], 40 L.Ed.2d 295 (1974), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party."
 "`696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit's rationale. See Lawhorn v. State, 581 So.2d 1159, 1171 (Ala.Crim.App. 1990) ("while the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party"); see also Melson v. State, 775 So.2d 857, 900-901 (Ala.Crim.App. 1999); Morrison v. State, 500 So.2d 36, 45 (Ala.Crim.App. 1985).
 "`Thus, the determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.'
 "Ex parte Waldrop, 859 So.2d [1181] at 1189-1190 [(Ala. 2002)] (footnote omitted)."
Brownfield, ___ So.2d at ___.
Because the jury convicted Eatmon of two counts of murder during a kidnapping in the first degree, a violation of § 13A-5-40(a)(1), Ala. Code 1975, and of the murder of two or more people during the same course of conduct or pursuant to one scheme, a violation of § 13A-5-40(a)(10), the statutory aggravating circumstances of committing a capital offense while engaged in the commission of a kidnapping, § 13A-5-49(4), Ala. Code 1975, and intentionally causing the death of two or more people pursuant to one scheme or course of conduct, § 13A-4-49(9), Ala. Code 1975, were "prov[en] beyond a reasonable doubt." § 13A-5-45(e), Ala. Code 1975; § 13A-5-50, Ala. Code 1975. Only one aggravating circumstance must exist in order to impose a sentence of death. § 13A-5-45(f), Ala. Code 1975. Thus, the jury, and not the trial judge, determined the existence of the "aggravating circumstance necessary for imposition of the death penalty" for Eatmon. See Ring,536 U.S. at 609, 122 S.Ct. 2428. Therefore, the findings reflected in the jury's verdict alone exposed Eatmon to a range of punishment that had the death penalty as its maximum.
Because this issue has been rejected in previously decided cases, no plain error exists, and Eatmon is not entitled to relief on these claims.
 III.
Eatmon also contends that Alabama's sentencing scheme in capital cases violates the Fifth, Sixth, Eighth, andFourteenth Amendments to the United States Constitution because, he says, the aggravating *Page 73 
factors and mitigating factors are found by a judge instead of a jury and the decision whether the aggravating circumstances outweigh the mitigating circumstances is resolved by the judge rather than the jury.
Eatmon also asserts that the death penalty in general and Alabama's death-penalty sentencing scheme in particular constitute cruel and unusual punishment in violation of theEighth Amendment to the United States Constitution under the evolving-standards-of-decency doctrine. Eatmon, without citing any authority, asserts that the death penalty has been "banned in almost all First World countries and serv[es] no legitimate function in a modern criminal justice system." (Eatmon's brief at 31.)
Eatmon did not raise these claims in the trial court; therefore, we must review them under the plain-error rule. See Rule 45A, Ala. R.App. P.
These claims have already been considered by this Court and the Alabama Supreme Court and each has been rejected. In Flowersv. State, 922 So.2d 938 (Ala.Crim.App. 2005), Flowers, like Eatmon, also asserted that the death-penalty sentencing scheme in Alabama was unconstitutional under the Fourth, Fifth, Sixth,Eighth, and Fourteenth Amendments to the United States Constitution. In Flowers, this Court noted that it has upheld the death penalty against similar constitutional attacks.
 "As we stated in Clark v. State, 896 So.2d 584, 597 (Ala.Crim.App. 2003) (opinion on return to remand and on application for rehearing):
 "`[B]oth the death penalty in general and Alabama's capital-murder statute in particular have been upheld against a variety of constitutional attacks. See Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (holding that Alabama's capital statute does not violate the Eighth Amendment); Gregg v. Georgia, 428 U.S. 153, 169, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion) (holding that "the punishment of death does not invariably violate the Constitution"); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (holding that the death penalty is not per se violative of the Eighth Amendment); and Ex parte Taylor, 808 So.2d 1215 (Ala. 2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002) (holding that Alabama's capital-murder statute does not violate the Fourteenth Amendment). Contrary to Clark's contention, the death penalty is not per se unconstitutional and, therefore, Clark's argument is meritless.'
 "896 So.2d at 642-43."
Flowers v. State, 922 So.2d 938, 958
(Ala.Crim.App. 2005).
Because each of Eatmon's constitutional claims has been held to be without merit in previous cases, we find no error, much less plain error, as to these claims.
 IV.
Pursuant to § 13A-5-53, Ala. Code 1975, we are required to address the propriety of Eatmon's conviction and sentence of death. Section 13A-5-53, Ala. Code 1975, requires that we review the propriety of Eatmon's death sentence to determine whether any error adversely affecting Eatmon's rights occurred in the sentence proceedings; whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and whether death is the appropriate sentence in the case. In determining whether death is the proper sentence, we must determine *Page 74 
whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether an independent weighing by this Court of the aggravating and mitigating circumstances indicates that death is the proper sentence; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
After evidence was presented to the jury during the penalty phase of Eatmon's trial, the jury, by a vote of 9 to 3, recommended a sentence of life in prison without the possibility of parole.
Pursuant to 13A-5-47, Ala. Code 1975, the trial court held a subsequent sentencing hearing to aid it in determining whether it would sentence Eatmon to death or to life imprisonment as recommended by the jury. The trial court ordered and received a written presentence investigation report, as required by § 13A-5-47(b). In its sentencing order, the trial court entered specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Ala. Code 1975, each mitigating circumstance enumerated in § 13A-5-51, Ala. Code 1975, and any mitigating circumstance found to exist under § 13A-5-52, Ala. Code 1975, as well as written findings of fact summarizing the offense and Eatmon's participation in it.
In its findings, the trial court found the existence of the following statutory aggravating circumstances: (1) that the capital offense was committed while Eatmon was under sentence of imprisonment; (2) that Eatmon had previously been convicted of a felony involving the use or threat of violence to the person; (3) that the capital offense was committed while Eatmon was engaged in the commission of a kidnapping; (4) that the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses; and (5) that Eatmon intentionally caused the death of two or more people by one act or pursuant to one scheme or course of conduct.
The trial court found no statutory mitigating circumstances existed; however, it did find the following nonstatutory mitigating circumstances: (1) that Eatmon lacked a relationship with his father; (2) that there was violence in the home in which Eatmon had been reared; and (3) that Eatmon used illegal drugs.
The trial court's sentencing order reflects that after considering all the evidence presented, the arguments of counsel, the presentence report, and the advisory verdict of the jury, and after weighing the aggravating circumstances against the mitigating circumstances, the trial court found that the aggravating circumstances outweighed the mitigating circumstance. Accordingly, the trial court sentenced Eatmon to death.
Eatmon was convicted of capital murder because the murder was committed during the first-degree kidnapping of Allison Kile and the first-degree kidnapping of Rick Kile, violations of § 13A-5-40(a)(1), Ala. Code 1975, and because he murdered two people pursuant to the same scheme or course of conduct, a violation of § 13A-5-40(a)(10).
In this case, the evidence shows that, while Rick Kile and Marshall were fighting over a $200 drug purchase, Eatmon hit Kile with an iron bar. Eatmon hit Kile with the iron bar again after Kile had already been bound and was lying in the trunk of the car.
Eatmon rode with Marshall to Watts Street, where the two doused the Kiles and the inside of their car with gasoline and kerosene, then ignited the car and left *Page 75 
the Kiles in the trunk, with their hands bound, to burn. The autopsy showed that the Kiles were still alive when the fire was started. Eatmon then left the scene.
The record does not reflect that the sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Ala. Code 1975. Furthermore, after independently weighing the aggravating circumstances and the mitigating circumstances, this Court is convinced that death was the appropriate punishment in this case.
As required by § 13A-5-53(b)(3), Ala. Code 1975, we must determine whether Eatmon's sentence was disproportionate or excessive when compared to the penalty imposed in similar cases. Eatmon committed murder during the course of a kidnapping, and he killed two people pursuant to the same scheme or course of conduct. Eatmon's sentence was not disproportionate or excessive when compared to penalties imposed in similar cases. SeeBrownfield v. State, [Ms. CR-04-0743, April 27, 2007] ___ So.2d ___ (Ala.Crim.App. 2007); Hodges v. State,856 So.2d 875 (Ala.Crim.App. 2001), aff'd, Ex parte Hodges,856 So.2d 936 (Ala. 2003); Brooks v. State,973 So.2d 380 (Ala.Crim.App. 2007) (convictions for capital murder during a kidnapping, capital murder during a burglary, and capital murder of a child under 14 years of age and resulting death sentence affirmed; conviction for capital murder during a robbery and burglary reversed); Flowers v. State, 922 So.2d 938
(Ala.Crim.App. 2005); and Smith v. State, 797 So.2d 503
(Ala.Crim.App. 2000). We find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases.
 V.
Because Eatmon has been sentenced to death, this Court must review these proceedings for plain error. Rule 45A, Ala. R.App. P., states:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
When discussing the application of the plain-error standard of review, this Court has stated:
 "The standard of review in reviewing a claim under the plain-error doctrine is stricter than the standard used in reviewing an issue that was properly raised in the trial court or on appeal. As the United States Supreme Court stated in United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1
(1985), the plain-error doctrine applies only if the error is `particularly egregious' and if it `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' See Ex parte Price, 725 So.2d 1063 (Ala. 1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Burgess v. State, 723 So.2d 742
(Ala.Cr.App. 1997), aff'd, 723 So.2d 770 (Ala. 1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999); Johnson v. State, 620 So.2d 679, 701 (Ala.Cr.App. 1992), rev'd on other grounds, 620 So.2d 709 (Ala. 1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993)."
Hall v. State, 820 So.2d 113, 121-22
(Ala.Crim.App. 1999), aff'd, 820 So.2d 152 (Ala. 2001). Although the failure to object will not preclude our review, it will weigh against any claim of prejudice. See Dill v. *Page 76 State, 600 So.2d 343 (Ala.Crim.App. 1991), aff'd,600 So.2d 372 (Ala. 1992).
We have searched the record for any error that may have adversely affected Eatmon's substantial rights, whether or not it was brought to the attention of this Court or the trial court, and have found none. See Rule 45A, Ala. For the R.App. P.
For the reasons set forth above, Eatmon's conviction and death sentence are affirmed.
AFFIRMED.
BASCHAB, P.J., and McMILLAN and WISE, JJ., concur. SHAW, J., concurs in the result.
[1] Marshall was also convicted of capital murder and was sentenced to death for his role in these offenses. His appeal is pending before this Court.